UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

TOURO INFIRMARY, PREFERRED           CIVIL ACTION
CONTINUUM CARE – NEW ORLEANS, LP,
AND ST. CHARLES HOSPITAL REAL
ESTATE CO., LP

VERSUS                               NO. 06-3535

TRAVELERS PROP. CASUALTY CO.         SECTION R(5)
OF AMERICA, BUILDING CONCEPTS
& DESIGN CONSTRUCTION, INC.,
AND STEPHEN D. VAUGHAN

<u>**ORDER AND REASONS**</u>

Before the Court are motions for partial summary judgment by plaintiffs and by defendant Travelers.  For the following reasons, the Court GRANTS the motions.

**I.   BACKGROUND**

**A.   Factual Background**

This case arises from damage sustained to St. Charles General Hospital, located at 3700 St. Charles Avenue in New Orleans, as a result of Hurricane Katrina on August 29, 2005.  At the time of the hurricane, plaintiffs St. Charles Hospital Real Estate Co. ("St. Charles") and Preferred Continuum Care – New

Orleans, LP  ("PCC") held an insurance policy with Travelers
Property and Casualty Co. of America on the hospital property.
St. Charles contracted with Building Concepts & Design
Construction ("BCDC") to repair the damage to the hospital, and
in return BCDC was to receive all of the insurance payments due
from Travelers.  In January 2006, Touro bought the hospital from
St. Charles and PCC.  Touro entered into a contract with BCDC,
St. Charles, and PCC in which all of the parties agreed that
Touro would assume the rights and obligations of St. Charles and
PCC under the original contract between those parties and BCDC.

        As of April 2006, BCDC had received nearly $1 million from
Travelers for repair work, which was well short of the amount
needed to repair all of the hurricane damage.  Although it is
unclear exactly what happened thereafter, it is undisputed that
Travelers made no more payments to BCDC and that BCDC performed
no further repairs to the hospital.


        **B.    Procedural Background**

        On July 10, 2006, Touro, PCC, and St. Charles sued
Travelers, BCDC, and BCDC's president, Stephen D. Vaughan,
seeking to nullify the BCDC contract and recover damages, and
seeking damages for breach of the insurance contract by
Travelers.  On August 3, 2006, Travelers answered, counterclaimed
against Touro, and crossclaimed against co-defendant BCDC.  In

2

its counterclaim against Touro and in its cross-claim against BCDC, Travelers seeks declarations that BCDC and Touro have no right to recover under the policy.  On September 12, 2006, BCDC answered and counterclaimed against Touro for breach of contract and tortious interference with its contract.

Touro now moves for partial summary judgment.  It seeks to rescind the contract between the plaintiffs and BCDC because BCDC is not – and never has been – a licensed contractor in Louisiana. Travelers likewise moves for partial summary judgment on its declaratory cross-claim against BCDC, arguing that the contract between the plaintiffs and BCDC was a nullity because of BCDC's lack of a Louisiana contractor's license.

## II.   STANDARD OF REVIEW

### A.   Summary Judgment

Summary judgment is appropriate only when the pleadings and summary judgment evidence establish that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  The court must be satisfied that no reasonable trier of fact could find for the nonmoving party or, in other words, "that the evidence favoring the nonmoving party is insufficient to enable a reasonable jury to return a verdict in her favor."  *Lavespere v. Niagara Mach. &*

3

*Tool Works, Inc.*, 910 F.2d 167, 178 (5th Cir. 1990) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).  The moving party has the burden of showing that there are no genuine issues of material fact.

   If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record contains insufficient proof concerning an essential element of the nonmoving party's claim.  *See Celotex*, 477 U.S. at 325; *see also Lavespere*, 910 F.2d at 178.  The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists.  *See Celotex*, 477 U.S. at 324.  The nonmovant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue for trial.  *See id.* at 325; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1996).


**III. DISCUSSION**

   **A.   Summary Judgment**

   It is undisputed that BCDC was not a licensed contractor under Louisiana law at the time it entered into the contract at issue or at any time thereafter.  (R. Doc. 50, pp. 8-9). Plaintiffs argue that BCDC's lack of a contractor's license renders the contract between them a nullity under Louisiana law.

Louisiana has enacted a broad licensing scheme for contractors. *See* La. Rev. St. §§ 37:2150-2173.  Under this scheme, it is "unlawful for any person to engage or to continue in this state in the business of contracting, or to act as a contractor as defined in this Chapter, unless he holds an active license as a contractor under the provisions of this Chapter."  La. Rev. St. § 37:2160(A).  Violations of this provision are misdemeanors punishable by fines and/or imprisonment.  Id. at § 37:2160(C).

The term "contractor" is defined as follows:

> "Contractor" means any person who undertakes to, attempts to, or submits a price or bid or offers to construct, supervise, superintend, oversee, direct, or in any manner assume charge of the construction, alteration, repair, improvement, movement, demolition, putting up, tearing down, or furnishing labor, or furnishing labor together with material or equipment, or installing the same for any building, highway, road, railroad, sewer, grading, excavation, pipeline, public utility structure, project development, housing, or housing development, improvement, or any other construction undertaking for which the entire cost of same is fifty thousand dollars or more when such property is to be used for commercial purposes other than a single residential duplex, a single residential triplex, or a single residential fourplex.

La. Rev. St. § 37:2150.1(4)(a).  The term "contractor" includes general contractors and subcontractors.  *Id.* at § 37:2150.1(4)(b).  A general contractor is "a person who contracts directly with the owner."  *Id.* at § 37:2150.1(6)(a).

In the original contract, BCDC contracted with St. Charles, the owner of the property, to "completely repair the damage . . .

caused by, and resulting from, the hurricanes to the Hospital." (R. Doc. 30-3, Ex. A, ¶ 1). The repairs were to be funded primarily from the proceeds of the Travelers insurance policy covering the property. *Id.; see also id.* at ¶ 7. Upon Touro's acquisition of the property, Touro, PCC, St. Charles, and BCDC entered into an agreement that assigned the BCDC construction contract to Touro. *Id.* at Ex. C.

The unrebutted evidence establishes that BCDC was acting as a contractor without a license. The contract was for the repair of a building, which falls under the purview of La. Rev. St. § 37:2150.1(4)(a). The cost of the repairs was greater than $50,000.00. (*Compare* R. Doc. 1-1, ¶ 16 *with* R. Doc. 11, ¶ 16). And BCDC was the general contractor under La. Rev. St. § 2150.1(6)(a) because it contracted directly with the owner.

Louisiana law provides that "[a] contract is absolutely null when it violates a rule of public order, as when the object of the contract is illicit or immoral." La. Civ. Code Art. 2030. The absolute nullity of a contract may be asserted "by any person or may be declared by the court on its own initiative." *Id.* Louisiana law also provides that "[p]ersons may not by their juridical acts derogate from laws enacted for the protection of the public interest. Any act in derogation of such laws is an absolute nullity." La. Civ. Code Art. 7.

Louisiana courts rely on these articles to invalidate

contracts made in violation of licensing requirements.  For example, in *Alonzo v. Chifici*, 526 So.2d 237, 240-43 (La. App. 5 Cir. 1988), the defendant entered into a renovation agreement with the plaintiff, an unlicensed contractor.  *Id.* at 238.  When the contractor sued to collect on the contract, the appeals court noted that the renovations were principally performed by the unlicensed contractor who was acting under the supervision of the owner.  *Id.* at 243.  In addition, the unlicensed plaintiff contracted directly with the owner.  *Id.*  Thus, the unlicensed contractor qualified as either a subcontractor or a general contractor under the licensing statutes.  *Id.*  Relying on Article 7, the court held that the contract was a nullity, because it was "in contravention of a prohibitory law."  *Id.* (citing La. Civ. Code Art. 7).  The court did note that the contractor was entitled to compensation for materials, services and labor to prevent unjust enrichment.  *Alonzo*, 526 So.2d at 243-44.

Further, in *Executone of Central La., Inc. v. Hosp. Svc. Dist. No. 1 of Tangipahoa Parish*, 798 So.2d 987, 993 (La. App. 1 Cir. 2001), the appeals court discussed the standing requirements for asserting the nullity of a public contract.  The court noted that "the award of a contract to an unlicensed contractor, when a license is statutorily required, would be an award in contravention of prohibitory law."  *Id.* (citation omitted).  Under such circumstances, "[t]he court, on its own motion, and

any interested person, may attack a contract as an absolute nullity on those grounds." *Id.* (citing La. Civ. Code Art. 2030); *see also United Stage Equipment, Inc. v. Charles Carter & Co., Inc.*, 342 So.2d 1153, 1155 (La. App. 1 Cir. 1977) ("where the law contains a penalty for a failure[] to obtain a license it implies a prohibition to collect on the contract entered into [f]or work done").

The Louisiana Supreme Court considered a similar question in a parallel context in *West Baton Rouge Parish School Board v. T.R. Ray, Inc.*, 367 So.2d 332 (La. 1979). In that case, a firm contracted with the school board to perform architectural services. *Id.* at 333. When the school board sought to terminate the contract, the architectural firm sought to compel arbitration under the contract to recover the balance it claimed was due. *Id.* The court discussed the licensing requirements for architects and found that the firm did not possess a license. *Id.* at 334. The court then stated that "the school board was entitled to have the contract declared void and to have execution of its arbitration clause enjoined." *Id.* Citing Civil Code Article 12, the predecessor provision to the present Article 7, the court noted that Louisiana law "prohibit[s] the practice of architecture without a license, and whatever is done in contravention of a prohibitory law is void." *Id.* at 335 (citations omitted). As in *Alonzo*, the court noted that the

unlicensed architect was entitled to some compensation to prevent unjust enrichment.  *Id.; see also Prytania Medical Complex Owners Ass'n v. Hanover Ins. Co.*, Civ. Act. No. 06-3675 (E.D. La. minute entry Dec. 20, 2006) (finding contract to be null because the contractor was not licensed).

BCDC argues that the contract is not null because all of the parties were fully aware that BCDC was not licensed when they entered into the contracts.  (R. Doc. 50 at p. 4).  BCDC cites the "dirty hands doctrine" for this proposition.  The cases cited by BCDC, however, do not support its contention.  In *Bergeron v. Mumphrey*, 38 So.2d 411, 414 (La. App. 1949), an appeals court invalidated a contract that was contrary to public policy, which would appear to support Touro's position.  The court in *Dugas v. Summers*, 339 So.2d 934, 938 (La. App. 4 Cir. 1977), followed *Mumphrey* in invalidating an illegal transaction.  The third case, *Norvell v. Norvell*, 629 So.2d 1312 (La. App. 4 Cir. 1993), was decided under Tennessee law.  Further, the Code provision on the effects of contractual nullity states that "[a]bsolute nullity may be raised as a defense even by a party who, at the time the contract was made, knew or should have known of the defect that makes the contract null."  La. Civ. Code Art. 2033.  The Code thus clearly suggests that knowledge and intent are immaterial to the enforceability of an illegal contract.

BCDC next argues that the Court should not void the entire

contract because portions of the agreement – such as moving and storing furniture, fixtures, and other items – did not require a contractor's license.  The Code provides that "[n]ullity of a provision does not render the whole contract null unless, from the nature of the provision or the intention of the parties, it can be presumed that the contract would not have been made without the null provision."  La. Civ. Code Art. 2034.  Although it is true that there are provisions in the contract that may not require a contractor's license, these tasks were clearly subsidiary to BCDC's role as a contractor.  For example, the agreement calls for BCDC to move items only  "if necessary."  (R. Doc. 30-3, Ex. B, ¶ 2).  Further, the provisions dealing with insurance proceeds were simply designed to compensate BCDC for repairing the hospital.  It cannot seriously be contended that the parties would have entered into any portion of this contract were it not for the provision calling for BCDC to repair the hospital.  If the contract is null as to the "repair" clause, it is therefore null in its entirety.  This conclusion is supported by the Louisiana Supreme Court's approach in *West Baton Rouge School Board*, 367 So.2d at 334, in which the Court invalidated the arbitration clause of a contract involving an unlicensed architect.  Although the Court found nothing specifically abhorrent about the arbitration clause, it nevertheless enjoined the enforcement of that provision because it was part of a null

contract.  *Id.* at 334-35.

BCDC further argues that it was acting as the owner of the hospital, which would exempt it from contractor licensing requirements under La. Rev. St. § 37:2157(2), which exempts owners of property who manage their own construction projects. BCDC argues that the assignment of certain rights under the contract to insurance proceeds and to deal with insurance issues transformed BCDC from a "contractor" into an "owner" for purposes of the licensing law.  This argument is without merit.  The contract assigned limited rights to BCDC and never conveyed ownership of the property to BCDC.  The statutory exemption applies to "owners of property" and contains no provision authorizing a "contractor" to be treated as the property owner under the circumstances presented here.  BCDC simply was not the owner of the property and is not entitled to the exemption.  The assignment of rights was designed to facilitate its ability to collect insurance proceeds for the repair work it did as a contractor.  To accept BCDC's argument would defeat the purposes of the statute to protect citizens from incompetent, inexperienced, and unlawful contractors, and would give the assignment provision a scope not intended by its plain language.

Finally, BCDC argues that it engaged the services of a licensed contractor, Battco Construction and Maintenance, Inc., to "serve as general contractor and to perform duties requiring a

11

Louisiana contractor's license."  The licensing law does not admit of such circumvention.  Although BCDC asserts that Battco was acting as "general contractor," the statute is clear that the general contractor is the entity that contracts directly with the owner.  La. Rev. St. § 37:2150.1(6)(a).  Further, the Louisiana Administrative Code provides that "[n]o unlicensed contractor shall be permitted to assign a contract, or any portion of a contract, in the amount of $50,000 or more to a licensed contractor in circumvention of the laws of the state of Louisiana."  46 La. Admin. Code, pt. XXIX, § 109.  If BCDC is arguing that it assigned the contract to Battco, a licensed contractor, such an assignment would be a circumvention of the licensing law.  Moreover, there is no summary judgment evidence that would support the conclusion that Battco was the general contractor.  Indeed, its name appears nowhere in the contract documents.  Nor is there any evidence that it performed work at the hospital.  BCDC is the entity that received the insurance proceeds for repair work under the contract.

For all of the foregoing reasons, the Court finds that the contract at issue was an absolute nullity.  When a contract is null, it "is deemed never to have existed.  The parties must be restored to the situation that existed before the contract was made."  La. Civ. Code Art. 2033.

**B.   Declaratory Judgment**

The contract between plaintiffs and BCDC contained an assignment of the right to insurance proceeds due under the Travelers insurance policy held by plaintiffs.  In its motion for summary judgment, Travelers argues that the nullity of the agreement between plaintiffs and BCDC means that the assignment is also null.  As the Court has discussed, "[n]ullity of a provision does not render the whole contract null unless, from the nature of the provision or the intention of the parties, it can be presumed that the contract would not have been made without the null provision."  La. Civ. Code Art. 2034.  Clearly, the contract would not have been made without the "repair" provision.  As a result, Travelers is entitled to a declaration that the provision under which BCDC may assert that it is entitled to insurance proceeds from Travelers on the policy covering the hospital is null.


**IV.  CONCLUSION**

For the reasons stated above, IT IS ORDERED that Touro's motion is GRANTED.  IT IS FURTHER ORDERED that Travelers' motion is GRANTED.

New Orleans, Louisiana, this 13th day of February, 2007.

_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE

13